PAUL *v.* CAMDEN MOTOR COMPANY, INC.

4-9996                                    255 S. W. 2d 418

Opinion delivered March 2, 1953.

*L. B. Smead* and *James M. Rowan, Jr.,* for appellant.

*J. Bruce Streett,* for appellee.

J. SEABORN HOLT, J. Appellant, Paul, brought suit against appellee, Camden Motor Company, Inc., to recover $1,000 for four months rent due him on a building leased to appellee. Appellee answered, admitting owing the amount claimed, and in a cross-complaint, alleged that appellant had breached a written lease contract under the terms of which appellee occupied appellant's building, to appellee's damage in the amount of $3,680, and sought judgment against appellant for $2,680, representing the damages of $3,680, less the $1,000 due appellant.

Trial by agreement before the court resulted in a judgment for appellee for $2,680 "as damages suffered by it as a result of the breach of the lease contract."

For reversal, appellant contends that the judgment was contrary to the law and the evidence. We do not agree.

Without attempting to set it out in detail, in effect, the evidence disclosed that on April 29, 1949, Paul, in writing, executed a two year lease to appellant, said lease to begin January 14, 1950. The consideration was $3,000 a year, payable $250 monthly, and under its terms appellant agreed to place the premises in a suitable state of repair fit for the use contemplated, that is, the operation by appellee of an automobile agency, garage, repair shop and filling station, and specifically appellant agreed to repair the roof, to enclose the front with glass (at a cost of approximately $1,500) in order to provide an adequate display and showroom, to paint and repair the walls and ceiling, to put the elevator and wiring in first class condition, and further agreed to commence all alterations and repairs without delay, except the glass enclosure, which was to be done after January 14, 1950, without interruptions or delay.

There was evidence that appellant failed and refused to make the repairs called for, and on June 14, 1950, rent was due appellant in the amount of $1,375. In full settlement of this rent, appellant accepted $900 for all rent due to July 14, 1950. By this settlement appellee was partially reimbursed to the extent of $475 for repairs appellant had failed to make. It appears also that by this same settlement appellant, Paul, acknowledged in writing that he was not relieved of his obligation to enclose the front of the building with glass as provided in the lease.

Thereafter, for July and August appellee paid the rent under protest, informing appellant that he had not provided an adequate showroom and the glass front. For the following months, September, October, November and December, appellant continued in refusing to carry out his contract to make the repairs and appellee withheld rentals for those months, amounting to $1,000, as indicated above.

On December 14, 1950, Paul informed appellee that he was cancelling the lease contract, and on December 30, 1950, appellee informed Paul that it had elected to cancel the lease because of the violation of its terms by Paul.

In the meantime, appellee's franchise with the Ford Motor Company for the sale of Lincoln and Mercury automobiles in Camden and surrounding territory had become jeopardized and it rented another building to which it moved January 13, 1951, with a $25 per month increase, amounting to $300, for the year 1951. There was no evidence that this increased rental was unreasonable in the circumstances. There was substantial evidence that appellee suffered damages, or a loss, of $900 as a result of expenditures for improvements it made in Paul's building in reliance on a two year lease, $936 (testimony of Mr. Jacks) resulting from the necessity to wash, dust and polish cars because of the absence of an enclosed showroom or front, $300, the cost ''to move all of our parts and shop equipment plus our Neon signs that we had on the outside of the building,'' before the expiration of its lease, $1,300 for new improvements in its new location, the Shirey building, which it was necessary to expend, or a total of $3,736.

It appears from appellant's abstract that he did not at the trial offer any objections to testimony introduced on the above items or to any orders of the court except to make a brief summary of the judgment. There was also evidence admitted without objection that appellee might have lost, in addition to the above, more than $5,000 on the sale of automobiles.

In the circumstances, the primary and decisive question is the proper measure, and amount, of damages recoverable.

As to the item of profits on sale of cars, the authorities generally seem to agree that profits that have been prevented or lost as a natural consequence of a breach of contract may be recovered as an item of damages. This court announced the rule in *Black* v. *Hogsett*, 145 Ark. 178, 224 S. W. 439, in this language:

"The principle touching the question of profits as an element of damages is well settled. The rule is that where one party to a contract is prevented from performing the same by the fault of the other party, he is entitled to recover the profits which the evidence makes it reasonably certain he would have made, had the other party carried out his contract. The rule that damages which are uncertain or contingent can not be recovered, does not apply to uncertainty as to the value of the benefits to be derived from performance, but to uncertainty as to whether any benefit would be derived at all. If it is reasonably certain that profits would have resulted had the contract been carried out, then the complaining party is entitled to recover." (Citing cases.)

Whether the trial court took into account the item of alleged loss of profits on car sales as a part of appellee's damages, the judgment does not disclose; however, we hold on the facts presented here that any such claimed profits were entirely too speculative, contingent, and uncertain to merit consideration. We do not mean to hold, however, that under no factual situation could the item of such profits on such loss of sales of automobiles be properly considered.

We hold on the facts presented that there was substantial evidence of damages to appellee to support the amount awarded by the trial court to it on the other items above, without taking into account any amount for loss of profits on car sales.

Affirmed.